## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| PolyMedix, Inc., | ) | |
| | ) | Case No. 13-10689 (BLS) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| In re: | ) | Chapter 7 |
| | ) | |
| PolyMedix Pharmaceuticals, Inc., | ) | Case No. 13-10690 (BLS) |
| | ) | |
| Debtor | ) | **Proposed Interim Hearing Date:  First Available Date** |
| | ) | **Proposed Interim Objection Deadline:  At Hearing** |
| | ) | **Proposed Final Hearing Date: May 31, 2013** |
| | ) | **Proposed Final Objection Deadline: May 29, 2013 at 4:00 p.m.** |

### TRUSTEE'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (B) GRANTING ADEQUATE PROTECTION IN CONNECTION THEREWITH PURSUANT TO 11 U.S.C. § 361, (C) SCHEDULING A FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001, AND (D) GRANTING RELATED RELIEF

Jeoffrey L. Burtch, in his capacity as the chapter 7 trustee (the "Trustee") for the estates (the "Estates") of the above-captioned debtors (the "Debtors"), respectfully files this motion (the "Motion") for entry of an interim order (the "Interim Order") (a) authorizing use of cash collateral on an interim basis pending a final hearing on the Motion (the "Final Hearing"); (b) granting, pending the Final Hearing, adequate protection to MidCap Financial SBIC, LP, in its capacity as administrative agent and lender ("Agent") in connection therewith; (c) scheduling the Final Hearing for entry of a final order authorizing use of cash collateral (the "Final Order"); and (d) granting related relief.  In support of the Motion, the Trustee states as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This matter is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

A.    **The Debtors' Business and Assets; Anticipated Sale Process and Need to Pay Post-Petition Expenses**

2.      On April 1, 2013 (the "Petition Date"), the Debtors commenced these bankruptcy cases (the "Bankruptcy Cases") by each filing voluntary petitions for relief under chapter 7 of the title 11 of the United States Code (the "Bankruptcy Code").  The Trustee was appointed in the Bankruptcy Cases shortly after the Petition Date.

3.      The Trustee is presently attempting to develop a process to sell substantially all of the Estates' assets (the "Sale Process").

4.      The Debtors, PolyMedix, Inc. and its wholly-owned subsidiary, PolyMedix Pharmaceuticals, Inc., are a clinical stage biotechnology company which developed small-molecule drugs designed to mimic the activity of host defense proteins (HDPs) for the treatment of infectious diseases and innate immunity disorders.  The Debtors' compounds are designed to imitate the mechanism of action of HDPs, which contribute to natural human immunity.  In contrast to existing antibiotics, the Debtors' antibiotic, known as brilacidin, was designed to exploit a method of bacterial cell killing, via biophysical membrane attack, against which bacteria have not shown development of resistance in multiple preclinical studies.  Prior to the Petition Date, the Debtors planned to initiate a study with brilacidin in patients with acute bacterial skin structure infections and also to develop brilacidin as a topical treatment for radiation and chemotherapy-induced cancer oral mucositis, a common and often debilitating complication of cancer treatments.

5.      The Trustee requires access to cash to pay certain necessary fees and professional expenses in connection with (i) the marketing and sale of the Debtors' assets, and (ii) the upkeep, maintenance and governmental filings relating to the Debtors' worldwide intellectual property rights, thereby preserving the value of the Debtors' assets and avoiding immediate and irreparable harm to the Estates.

**B.      The Debtors' Indebtedness to Agent and Negotiation of the Interim Order**

6.      The Debtors and Agent are parties to a certain Loan and Security Agreement dated as of April 5, 2012, which was amended pursuant to Amendment No. 1 to Loan and Security Agreement dated June 11, 2012, and Amendment No. 2 to Loan and Security Agreement dated January 16, 2013 (as the same may be further amended, restated, supplemented, or otherwise modified from time to time, the "Loan Agreement"), pursuant to which the Debtors established certain financing arrangements with Agent.  The Loan Agreement and all documents, instruments, and agreements executed in connection therewith, including, without limitation, the Control Agreement (defined below) (in each case, as amended, restated, supplemented or otherwise modified from time to time), shall collectively be referred to herein as the "Loan Documents"[1], pursuant to which Agent made certain loans and other extensions of credit available to the Debtors.

7.      Agent asserts that each of the Debtors granted to Agent a first-priority, perfected, continuing security interest in and lien upon all of the following property of each of the Debtors, whether now owned or hereafter acquired or existing, and wherever located (collectively, including "Cash Collateral" (defined below), the "Prepetition Collateral"):

---

[1] All capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to such terms in the Proposed Interim Order.

3

(a)    all goods, Accounts (including health-care insurance receivables), Equipment, Inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, General Intangibles, commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts[2], investment accounts, commodity accounts and other Collateral Accounts, all certificates of deposit, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), IP Proceeds, securities, and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located; and

(b)    all of the Debtors' Books relating to the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing.

8.    As of the Petition Date and in accordance with the terms of the Loan Documents, Agent asserts that the Debtors are indebted to Agent, without defense, counterclaim or offset of any kind, in the principal amount of $6,346,666.66, plus accrued interest, fees and costs (the "Prepetition Obligations").

9.    Agent further asserts that pursuant to the Loan Documents, the Debtors' cash on hand and cash equivalents as of the Petition Date that constitute proceeds of the Prepetition Collateral are cash collateral of Agent within the meaning of 11 U.S.C. § 363(a) (collectively, "Cash Collateral").

10.    After arm's length negotiations, the Trustee and Agent have agreed that the Trustee may use the Cash Collateral under the terms and conditions set out in the proposed

---

[2] Agent and TD Bank are parties to that certain Deposit Account Control Agreement dated June 21, 2012 ("Control Agreement"), pursuant to which Agent asserts that it perfected its liens in the Debtors' deposit accounts at TD Bank N.A. ending in XXXX7890 and XXXX9262.

Interim Order attached as Exhibit "A" to this Motion (the "Proposed Interim Order").  The

Trustee hereby incorporates the Proposed Interim Order into this Motion by reference.[3]

## SUMMARY OF RELIEF REQUESTED

11.  The Trustee seeks interim, and then final, approval of the terms set forth in the

Proposed Interim Order, which, *inter alia*:

      a.      authorizes the Trustee, pursuant to 11 U.S.C. § 363(c), to use Cash Collateral pursuant to the terms and conditions of the Proposed Interim Order during the Interim Cash Collateral Period (as defined below); and

      b.      authorizes the Trustee, pursuant to 11 U.S.C. §§ 361 and 363, to provide adequate protection with respect to the Cash Collateral, to compensate Agent for any loss or diminution in the value of the Cash Collateral resulting from the Trustee's use of the Cash Collateral and the imposition of the automatic stay during the Interim Cash Collateral Period.

12.  In addition, the Trustee requests that the Court: (i) schedule a Final Hearing, pursuant to Federal Rule of Bankruptcy Procedure 4001, for not later than fourteen (14) days after the entry of the Interim Order, to consider entry of a Final Order approving the terms of the Interim Order on a final basis; and (ii) approve the Trustee's proposed notice procedures with respect to the Final Hearing.

13.  By a separate Motion to Shorten, filed concurrently with this Motion, the Trustee is requesting that the Court schedule an expedited interim hearing for consideration of this Motion and the attached Proposed Interim Order as soon as is reasonably possible.

---

[3] In the event of any inconsistencies between the Proposed Interim Order and this Motion, the Proposed Interim Order shall govern.

## BASIS FOR RELIEF

### A.    The Trustee's Need for Use of the Cash Collateral

14.    As described herein, the Trustee has an urgent need for immediate use of the Cash Collateral pending the Final Hearing on this Motion.  Subject to the challenge rights that are reserved to the Trustee under the Proposed Interim Order, the Trustee has reason to believe that all of the Debtors' cash and cash equivalents (the "Available Cash") are subject to Agent's existing liens and represent the proceeds, products, and profits of the Prepetition Collateral.

15.    The entry of the Proposed Interim Order as the Interim Order is in the best interests of the Debtors, the Estates, and creditors because it will enable the Trustee to pay certain necessary fees and professional expenses under the Bankruptcy Code in connection with (i) the preliminary solicitation of interest in the Debtors' assets, and (ii) the upkeep and maintenance of, and governmental filings relating to, the Debtors' worldwide intellectual property rights pending sale or other disposition, thereby preserving the value of the Debtors' assets and avoiding immediate and irreparable harm to the Estates.

16.    Absent the ability to use Cash Collateral, the Trustee will not have unencumbered cash to pay necessary post-petition expenses.  Accordingly, the Estates would be immediately and irreparably harmed without the Trustee gaining immediate use of the Cash Collateral.

### B.    The Trustee's Use of Cash Collateral under the Proposed Interim Order

17.    The Trustee has begun a dialogue with Agent regarding the development of the Sale Process that would be funded by Agent.   The Trustee is cautiously optimistic that he will reach an agreement with Agent that will include the funding of the Sale Process and a sharing arrangement between Agent and the Estates with respect to the net sale proceeds.   The Trustee and Agent have agreed to enter into this short-term cash collateral arrangement while they explore whether a more comprehensive agreement can be reached.

18.    Attached to the Proposed Interim Order is a budget (the "Interim Budget") for the period from the Petition Date through and including May 31, 2013. The Interim Budget reflects, on a line-item basis, anticipated expenditures and includes all necessary and required expenses which the Trustee expects to incur during the term of the Interim Budget in order to avoid immediate and irreparable harm.[4] The Trustee will be authorized to use the Cash Collateral only for payment of such items as is set forth in the Interim Budget, subject to the terms and conditions set forth in the Loan Documents and the Interim Order. Any disbursements by the Trustee other than for budgeted items shall constitute a Termination Event in accordance with the provisions of the Interim Order unless Agent consents to those changes in writing or the Court enters an Order, after notice to Agent and a hearing, authorizing those changes.

19.    There is no line item in the Interim Budget for any monthly service fees to be charged by Rabobank, N.A. or Bankruptcy Management Solutions, Inc., and the Trustee is requesting that such fees not be charged against any account holding Cash Collateral or any Cash Collateral of Agent.

20.    Under the terms of the Proposed Interim Order, Agent will be able to seek an expedited hearing seeking to terminate the Trustee's ability to use Cash Collateral during the Interim Cash Collateral Period and to modify the automatic stay imposed by Bankruptcy Code § 362, upon the occurrence of certain events (the "Termination Events"). See Proposed Interim Order, ¶ 14.

21.    Agent may seek such relief immediately upon the occurrence of the following Termination Events: (i) the expiration of the Interim Order, other than due to the entry of the Final Order or the entry of a further Interim Order entered with Agent's consent; (ii) the

---

[4] The Trustee believes that the Interim Budget is sufficient to cover anticipated administrative expenses through May 31, 2013. However, it is possible that other administrative expenses may be incurred that the Trustee could not reasonably anticipate. As such, no section 506(c) waiver is being granted hereunder.

modification or extension of the Interim Order, without Agent having been provided a minimum of five (5) business days prior written notice of the hearing on such modification or extension, unless Agent agrees to shorter notice; (iii) any disbursements by the Trustee other than for budgeted amounts, unless Agent consents to those changes in writing or the Court enters an Order, after notice to Agent and a hearing, approving such changes; (iv) an application is filed by the Trustee, without the prior written consent of Agent, for the approval of any claim arising under 11 U.S.C. § 507(b) or any lien in the Bankruptcy Cases which is *pari passu* with or senior to Agent's Super-Priority Claim or Replacement Liens, excluding, in all cases, the Super-Priority Claim, Replacement Liens or other liens arising under or otherwise permitted by the Interim Order; provided, however, it shall not be a Termination Event as to Agent if the Trustee obtains postpetition financing that pays, in full, the Prepetition Obligations; (v) the dismissal of the Bankruptcy Cases; (vi) (*x*) the Trustee asserts in any pleading filed in any court that any material provision of the Interim Order is not valid and binding for any reason, or (*y*) any material provision of the Interim Order shall for any reason, other than the entry of the Final Order, or any other order of the Court approving the Trustee's use of Cash Collateral, cease to be valid and binding without Agent's prior written consent; and (vii) any lapse of insurance on any of the Debtors' properties.

22.    In addition, Agent may seek an expedited hearing seeking to terminate the Trustee's ability to use Cash Collateral during the Interim Cash Collateral Period and to modify the automatic stay imposed by 11 U.S.C. § 362 three (3) business days after Agent delivers written notice to the Trustee that an event of default has occurred, unless such event of default has been fully cured within such three (3) business day period, upon the occurrence of either of the following two Termination Events:  (i) the Trustee fails to comply with any of the material

terms or conditions of the Interim Order or (ii) Agent reasonably believes the Prepetition Collateral cannot be marketed and sold in a cost-effective manner.

23.     Upon the occurrence of a Termination Event, as set forth above (and including any applicable cure period), Agent's consent to the Trustee's use of Cash Collateral shall automatically terminate, and, upon Agent providing notice of a Termination Event and/or notice of an expedited hearing seeking to terminate the Trustee's use of Cash Collateral, the Trustee shall account for any such Cash Collateral in his possession, custody or control. Notwithstanding the foregoing, however, after the occurrence of a Termination Event, the Trustee will be permitted to continue to utilize the Cash Collateral to pay for items in the Interim Budget that have accrued through such occurrence, plus up to $17,500 in fees and expenses incurred from and after the occurrence of a Termination Event.

24.     So long as no Termination Event as described above has occurred, the Interim Order shall remain in effect until the earliest of (i) the close of business on May 31, 2013, or (ii) the conclusion of the Final Hearing (such period, as it may be extended with the agreement of the Agent, the "Interim Cash Collateral Period"). See Proposed Interim Order, ¶ 2.

25.     The Trustee believes that these procedures and terms will allow him sufficient use of the Cash Collateral during the Interim Cash Collateral Period, subject to the Interim Budget, so that he will be able to preserve and maintain the Estates' assets and determine whether a more comprehensive agreement can be reached with Agent with respect to a Sale Process.

C.    **Agent's Adequate Protection Pursuant to the Stipulation**

26.     Pursuant to 11 U.S.C. § 363(c)(2), "The Trustee may not use, sell, or lease cash collateral . . . unless - (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

9

27.     Agent has consented to the Trustee's use of the Cash Collateral provided that the Proposed Interim Order, which includes certain adequate protection provisions in favor of Agent, is approved by the Court as the Interim Order.

28.     Accordingly, the Trustee seeks authority to grant Agent, *nunc pro tunc* as of the Petition Date, the adequate protection as set forth the Proposed Interim Order, including:

a.      Replacement Collateral and Replacement Liens.  Agent will be granted valid, perfected and enforceable liens and security interests (collectively, the "Replacement Liens") in all prepetition and postpetition property of the Debtors' estates, whether existing as of the Petition Date or thereafter acquired, that is not subject to a prior valid, perfected and non-avoidable lien, including, without limitation, all unencumbered cash, but excluding all claims arising under 11 U.S.C. §§ 544, 545, 547, 548, 549 and 550, and the proceeds, products, offspring, rents and profits of all of the foregoing (collectively, the "Replacement Collateral").

The Replacement Liens granted under the Interim Order shall be valid, perfected and enforceable against the Replacement Collateral as of the Petition Date without further filing or recording of any document or instrument or the taking of any further actions, and shall not be subject to dispute, avoidance or subordination.   Notwithstanding the automatic perfection of the Replacement Liens granted pursuant to the Interim Order, Agent shall be authorized, but not required, to file financing statements and other similar instruments in any jurisdiction, and to take any other action they deem necessary or appropriate in order to validate, evidence or perfect such Replacement Liens.  A certified copy of the Interim Order may, in Agent's discretion, be filed with any filing offices in addition to, or in lieu of, such financing statements or other similar instruments, and all filing offices are hereby authorized to accept such certified copy of the Interim Order for filing.  The Trustee will be authorized and directed to execute and deliver all instruments and documents prepared by Agent and to pay all reasonable fees and expenses that are reasonably required or necessary to facilitate any such filings or recordings elected to be made by Agent.

The Replacement Liens shall be subject and subordinate in priority to (i) any valid and perfected liens, security interests and other encumbrances, existing as of the Petition Date, (ii) the fees and expenses of the professionals retained by the Trustee and approved by the Court, including but not limited to Cozen  O'Connor and Cooch & Taylor, subject to a cap of $75,000 during the Interim Cash Collateral Period; and (iii) the legal and filing fees related to the preservation of the Debtors' intellectual property, all in the amounts and as set forth in the Budget (collectively, the

"Carve Out"). The Replacement Liens granted to Agent shall have the same priority in Debtors' property as its prepetition liens against the Debtors' property.

The Replacement Liens shall be limited in amount to the aggregate diminution in the value of the Prepetition Collateral and Cash Collateral during the Interim Cash Collateral Period ("Interim Replacement Value").

See Proposed Interim Order, ¶ 9(a)(i)-(iii).

b.    Super-Priority Administrative Expense Claim. If and to the extent the adequate protection of the interests of Agent in the Prepetition Collateral pursuant to the Interim Order proves insufficient, Agent shall have an allowed claim under 11 U.S.C. § 507(b) (the "Super-Priority Claim"), subject to the Carve Out, in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Bankruptcy Cases that are incurred under any provision of the Bankruptcy Code, including 11 U.S.C. §§ 105, 326, 330, 331, 351, 503(b), 506(c), 507(a), or 552(b); and (2) the claims of any other party in interest under 11 U.S.C. § 507(b); provided, however, that any Super-Priority Claim shall be limited in amount to the Interim Replacement Value, shall be subject to the Carve Out, and, absent further Order of the Court, shall not be paid from proceeds of actions under Chapter 5 of the Bankruptcy Code.

See Proposed Interim Order, ¶ 9(b).

c.    Prohibition Against Priming Liens. No order shall be entered in the Bankruptcy Cases authorizing the Trustee to incur debt secured by a lien which is equal to or superior to Agent's liens and security interests in the Prepetition Collateral, or which is given superpriority administrative expense status under 11 U.S.C. § 364(c)(1), unless, in addition to the satisfaction of all requirements of 11 U.S.C. § 364 for the incurrence of such debt: (a) Agent has consented to such order; or (b) such credit or debt is first used to immediately pay the Prepetition Obligations in full.

See Proposed Interim Order, ¶ 9(c).

29.    The Trustee believes that the adequate protection granted under the Interim Order as proposed is reasonable under the circumstances, and will fairly protect Agent from any diminution in value of the Cash Collateral. In addition, the Trustee believes that granting Agent such adequate protection is necessary to induce Agent to consent to the Trustee's use of the Cash Collateral. Lastly, due to the limited nature of this Cash Collateral arrangement, the

Replacement Liens shall not attach to, and the Super-Priority Claim shall not be paid from, any claims or recoveries under Chapter 5 of the Bankruptcy Code.

**D.    Disclosures Pursuant to Local Rule of Bankruptcy Procedure 4001-2**

30.    Local Rule of Bankruptcy Procedure 4001-2 requires that certain provisions in a proposed cash collateral stipulation be highlighted.    Such provisions include, *inter alia*, "[p]rovisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order . . . to investigate such matters." See Local Rule of Bankruptcy Procedure 4001-2(a)(i)(B).

31.    The Proposed Interim Order includes such a provision.    The full text of that provision is as follows:

> Challenge Rights.  The findings set forth herein shall be deemed to be findings of this Court for all purposes in these Bankruptcy Cases and shall be binding upon all parties in interest, including without limitation, the Trustee, except if and to the extent (a) a party in interest files an adversary proceeding (i) challenging the amount, validity, perfection, or priority of the Prepetition Obligations or Agent's liens on the Prepetition Collateral in respect thereof, or the avoidability (under Chapter 5 of the Bankruptcy Code) of Agent's liens on the Prepetition Collateral, on behalf of the Debtors' estates, by June 4, 2013, or (ii) otherwise asserting any other claims or causes of action against Agent relating to the Prepetition Obligations, including, without limitation, the avoidability (under Chapter 5 of the Bankruptcy Code) of payments made to Agent on or within ninety (90) days before the Petition Date, and whether the Prepetition Obligations should be equitably subordinated or recharacterized as equity, on behalf of the Debtors' estates, no later than August 4, 2013, unless such deadlines are extended by agreement of the parties or Order of this Court (for good cause shown), and (b) the Court subsequently enters a final judgment in favor of the plaintiff in any such timely and properly filed adversary proceeding.  For all purposes in the Bankruptcy Cases, and subject to the challenge rights herein, Agent's liens on the Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and Agent, the Prepetition Obligations and Agent's liens on

the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including without, limitation, any successor Trustee. If any such adversary proceeding is properly commenced as of such date, the findings relating to the validity, priority and enforceability contained herein shall nonetheless remain binding on all parties in interest except to the extent that such findings were expressly challenged and modified by final judgment in such adversary proceeding. In the event the Trustee and Agent do not reach an agreement to extend the use of Cash Collateral and proceed with a sale process, then the August 4, 2013 deadline shall be extended to coincide with the applicable statutes of limitation for such claims and causes of action.

See Proposed Interim Order, ¶ 20.

32.    The Trustee submits that this provision for limited challenge rights is a necessary feature of the adequate protection package requested by Agent, without which Agent would not have consented to the use of Cash Collateral. This type of provision, including an investigation period, is frequently approved by the Courts of this District. The Trustee believes that this provision is reasonable in light of the circumstances of these cases and the benefits that will flow from his ability to use the Cash Collateral.

**NEED FOR INTERIM APPROVAL AND SCHEDULING OF INTERIM HEARING**

33.    Local Rule of Bankruptcy Procedure 4001-2(b) provides, "When Financing Motions [which include cash collateral motions] are filed with the Court on or shortly after the petition date, the Court may grant interim relief pending review by interested parties . . . . Such interim relief shall be only what is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."

34.    By a Motion to Shorten filed concurrently with this Motion, the Trustee is requesting that the Court conduct an expedited interim hearing on this Motion and authorize him (from and after entry of the Interim Order and pending the Final Hearing) to use the Cash Collateral on an interim basis pursuant to the terms of the Proposed Interim Order for, among

other things, maintaining the Estates' assets in furtherance of the Sale Process. The Trustee's interim access to Cash Collateral is necessary to enable him to protect the Estates' assets from potential diminution in value and, consequently, will benefit the creditor body as a whole. Accordingly, the Trustee's proposed interim relief is necessary to avoid immediate and irreparable harm.

35.    The Trustee is requesting that the Court schedule an expedited interim hearing for consideration of this Motion and the Proposed Interim Order for the earliest possible date on which the Court is available.

## REQUEST FOR FINAL HEARING

36.    The Trustee requests that the Court set a date for the Final Hearing that is as soon as reasonably possible following entry of the Interim Order, but in no event earlier than fourteen (14) days following the service of this Motion, and fix a deadline applicable to objections, if any.

## NOTICE

37.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known, by facsimile, e-mail, overnight courier, and/or hand delivery: (i) the office of the United States Trustee for the District of Delaware; (ii) all known parties asserting liens on the Debtors' assets; (iii) counsel to Agent; and (iv) the parties listed on the Debtors' list of twenty (20) largest unsecured creditors (collectively, the "Initial Notice Parties"). The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given. Following the entry of the Interim Order and scheduling of the Final Hearing, the Trustee will immediately provide notice of the Motion and a copy of the Interim Order, and notice of the Final Hearing, to (i) the Initial Notice Parties and (ii) any party that has filed a request for notice in the Bankruptcy Cases within twenty-four (24) hours of the entry of the Interim Order.

## NO PRIOR REQUEST

38.    No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Trustee respectfully requests that the Court enter the Interim Order, substantially in the form of the Proposed Interim Order attached as Exhibit "A" hereto: (i) granting this Motion on an interim basis; (ii) authorizing the Trustee, on an interim basis, to use the Cash Collateral pursuant to the terms of the Interim Order, and take such actions as may be necessary to carry out the terms of the Interim Order; (iv) scheduling a Final Hearing and approving the Trustee's proposed notice procedures; and (v) granting such other and further relief as the Court may deem appropriate.

Dated: May 15, 2013

COZEN O'CONNOR

Mark E. Felger (No. 3919)
1201 North Market Street, Suite 1001
Wilmington, DE  19801
Telephone:  (302) 295-2087
Facsimile:  (302) 295-2013

*Special Counsel for the Trustee*